IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NICOLE COLAVECCHIA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>SOUTH SIDE AREA SCHOOL DISTRICT,<br><br>　　　　Defendant. | 2:22-CV-01804-CCW |

**OPINION AND ORDER**

Before the Court is Defendant South Side Area School District's Motion to Dismiss Plaintiff Nicole Colavecchia's Complaint. ECF No. 12. With briefing complete, the Motion is now ripe for adjudication. *See* ECF Nos. 13, 14. For the following reasons, the Court will GRANT IN PART and DENY IN PART the Motion.

**I.　Background**

In 2015, Ms. Colavecchia started working as an instructor for South Side, a school district that receives federal financial assistance. ECF No. 1 ¶¶ 9, 39. In September of 2020, Ms. Colavecchia began receiving sexually inappropriate comments from Robert Kavals, the Chief of Safety and Security, whose office was adjacent to her classroom. *Id.* ¶¶ 11–13. She alleges that Mr. Kavals "continually stated his desire to have a sexual relationship with [her] and requested sexual favors from her on multiple occasions." *Id.* ¶ 13. Mr. Kavals also made comments about her appearance and her weight. *Id.*

Ms. Collavecchia alleges that over the course of approximately eight months, she continued to receive sexually inappropriate comments from Mr. Kavals in person, via text message, and

throughout the day. *Id.* ¶¶ 14. 16. Ms. Colavecchia asserts that she had asked him to stop, but he still repeatedly made sexually inappropriate comments. *Id.* ¶¶ 15–16.

On May 18, 2021, South Side announced that its employees would need to attend a Title IX training course. *Id.* ¶ 17. Following this announcement, Ms. Colavecchia contacted the principal to report Mr. Kavals' behavior, and the principal then referred the complaint to the superintendent. *Id.* ¶ 19. According to Ms. Colavecchia, on May 28, 2021, the superintendent informed her that he was "handling" the situation. *Id.* However, she alleges, the superintendent did not begin an internal investigation until November of 2021. *Id.* ¶¶ 19–20.

The 2021 fall semester ended without any corrective action taking place. *Id.* ¶ 21. Ms. Colavecchia alleges that she had concerns about her safety at work such that she had to resign on February 9, 2022. *Id.* ¶¶ 22–23. She alleges that other female employees were subject to similar behavior from Mr. Kavals and had previously reported his behavior to management-level employees at South Side. *Id.* ¶ 24. In addition, she alleges that a subsequent Title IX investigation revealed that Mr. Kavals "had a history of inappropriate communication with female staff members within [South Side's] district" and that he had been "questioned regarding his behavior on at least two occasions." *Id.* ¶¶ 25.

## II.     Legal Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a claim. In reviewing a motion to dismiss, the court accepts as true a complaint's factual allegations and views them in the light most favorable to the plaintiff. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d. Cir. 2008); *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). Although a complaint need not contain detailed factual allegations to survive a motion to dismiss, it cannot rest on mere labels and conclusions. *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 555 (2007). That is, "a formulaic recitation of the elements of a cause of action will not do." *Id.* Accordingly, "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.*, and be "sufficient to state a claim for relief that is plausible on its face," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than the sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

The United States Court of Appeals for the Third Circuit has established a three-step process for district courts to follow in analyzing a Rule 12(b)(6) motion:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

*Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011) (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010)).

That said, under Rule 8's notice pleading standard, even after the Supreme Court's decisions in *Twombly* and *Iqbal*, a plaintiff need only "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of her claims." *Connolly v. Lane Constr. Corp.*, 809 F.3d 780, 788–89 (3d Cir. 2016) (finding that "at least for purposes of pleading sufficiency, a complaint need not establish a *prima facie* case in order to survive a motion to dismiss"). Thus, for the purpose of deciding the present Motion, the Court accepts as true the facts alleged in the Amended Complaint and views those facts in the light most favorable to the plaintiff. *See Burtch*, 662 F.3d, at 220.

**III.    Discussion**

Ms. Colavecchia asserts two hostile work environment claims on the basis of sex—one under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, and one under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, *et seq.*[1]  In addition, for her hostile work environment claim under Title VII, she has asserted a constructive discharge claim.  South Side moves to dismiss her Complaint in its entirety.

    **A.    Ms. Colavecchia Has Plausibly Alleged a Hostile Work Environment Claim Under Title VII**

Ms. Colavecchia alleges that South Side created a sexually hostile work environment in violation of Title VII.  Title VII prohibits an employer from "discriminat[ing] against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex."  42 U.S.C. § 2000e–2(a)(1).  This provision prohibits sexual harassment that is "sufficiently severe or pervasive to alter the conditions of [the plaintiff's] employment and create an abusive working environment," which may give rise to a hostile work environment claim.  *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986) (internal quotation marks omitted).

To state a hostile work environment claim under Title VII, an employee must allege that (1) she suffered intentional discrimination on the basis of sex;  (2) the discrimination was severe or pervasive;  (3) the discrimination detrimentally affected her;  (4) the discrimination would detrimentally affect a reasonable person in that position;  and (5) there is respondeat superior liability.  *Mandel v. M&Q Packaging Corp.*, 706 F.3d 157, 169 (3d Cir. 2013).

---

[1] Ms. Colavecchia has clarified that she "is only asserting claims for hostile work environment under Title VII and Title IX," such that any discussion by South Side related to a sex discrimination disparate treatment claim under either of these statutes is moot.  ECF No. 14 at 4, 9.  In addition, because both claims arise under federal statutes, the Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

4

Under the first prong, a court may conclude that sexual proposals from colleagues constitute sex discrimination. *See Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998) (discrimination on the basis of sex is "easy to draw in most male-female sexual harassment situations, because the challenged conduct typically involves explicit or implicit proposals of sexual activity"). South Side argues that Ms. Colavecchia has not alleged that discrimination occurred on the basis of sex. The Court disagrees. Ms. Colavecchia has alleged that Mr. Kavals "continually stated his desire to have a sexual relationship with [her] and requested sexual favors from her on multiple occasions," creating a plausible inference of sex discrimination. ECF No. 1 ¶ 15. Therefore, the Court finds that she has adequately alleged intentional discrimination on the basis of sex.

Under the second prong, a court considers the totality of the circumstances in assessing whether the challenged conduct was sufficiently severe or pervasive. *Mandel*, 706 F.3d at 169. A court may assess "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). South Side argues that Mr. Kavals' comments are not sufficiently extreme as to alter "the terms and conditions of employment." ECF No. 13 at 8 (quoting *Burgess v. Dollar Tree Stores, Inc.*, 642 F. App'x 152, 155 (3d Cir. 2016)). As alleged, however, Mr. Kavals' sexual comments to Ms. Colavecchia were not offhanded remarks but occurred "on multiple occasions" starting in September of 2020 and continuing to, at least, May of 2021. ECF No. 1 ¶¶ 13, 15, 16. These comments allegedly occurred via text, in person, and at any time of day. *Id.* ¶ 14. Therefore, the Court finds that she has sufficiently alleged that the comments were severe and pervasive.

To the extent that South Side addresses the remaining components of a hostile work environment claim—whether the comments detrimentally affected Ms. Colavecchia, whether the comments would have detrimentally affected a reasonable person in her position, and whether respondeat superior liability exists—the Court finds that Ms. Colavecchia has plausibly alleged each of these. *Mandel*, 706 F.3d at 169.  First, accepting the allegations as true, she asserts that the comments did, in fact, detrimentally affect her given that she felt unsafe at work. *Grazioli v. Genuine Parts Co.*, 409 F. Supp. 2d 569, 578 (D.N.J. 2005) (citing *Harris*, 510 U.S. at 22) (this subjective component is "a relatively low hurdle to clear").  Second, it is plausible that a reasonable person in her position would have been detrimentally affected by these comments, especially in light of the fact that other female staff had made complaints about Mr. Kavals' behavior. *See Oncale*, 523 U.S. at 81 (this objective component is evaluated in light of "all the circumstances" with "an appropriate sensitivity to social context").  Third, she alleges that she reported the inappropriate behavior to the principal and the superintendent, but no corrective action was taken, such that respondeat superior liability could plausibly exist. *Vance v. Ball State Univ.*, 570 U.S. 421, 446 (2013) ("[A]n employer will always be liable when its negligence leads to the creation or continuation of a hostile work environment.").  Accordingly, South Side's Motion to Dismiss the hostile work environment claim under Title VII will be DENIED.

      **B.**      **Ms. Colavecchia Has Not Plausibly Alleged a Claim of Constructive Discharge Under Title VII**

Ms. Colavecchia further alleges that the hostile work environment resulted in a constructive discharge.  An employee is subject to a constructive discharge when an "employer knowingly permit[s] conditions of discrimination in employment so intolerable that a reasonable person subject to them would resign." *Spencer v. Wal-Mart Stores, Inc.*, 469 F.3d 311, 317 n.4 (3d Cir. 2006) (quoting *Goss v. Exxon Office Sys. Co.*, 747 F.2d 885, 887 (3d Cir. 1984)).  "The degree of

harassment necessary to prove constructive discharge is greater than the minimum needed to prove a hostile work environment." *Jennings-Fowler v. City of Scranton*, 680 F. App'x 112, 117–18 (3d Cir. 2017).

Ms. Colavecchia has not plausibly alleged that she was constructively discharged. She has not asserted that Mr. Kavals continued to harass her during the nine months between May 2021, when she informed the principal of his inappropriate behavior, and February 9, 2022, when she resigned. The intolerability of her work conditions is an objective standard, and, although she alleges that she felt unsafe at work, Ms. Colavecchia has not provided any additional factual allegations that suggest her "employment [was] so intolerable that a reasonable person subject to them would resign." *Spencer*, 469 F.3d at 317 n.4. For this reason, Ms. Colavecchia's constructive discharge claim will be DISMISSED WITHOUT PREJUDICE. Accordingly, the Defendants' Motion to Dismiss the constructive discharge claim will be GRANTED.

### C. Ms. Colavecchia Has Plausibly Alleged a Hostile Work Environment Claim Under Title IX

Ms. Colavecchia also asserts a hostile work environment claim under Title IX. Title IX provides, "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). For a hostile work environment claim under Title IX, a plaintiff must allege that a federal funding recipient acted with deliberate indifference to known sexual harassment. *Kahan v. Slippery Rock Univ.*, 50 F. Supp. 3d 667, 697 (W.D. Pa. 2014) (Conti, C.J.); *see also Hall v. Millersville Univ.*, 22 F.4th 397, 403–04 (3d Cir. 2022). Deliberate indifference is in lieu of respondeat superior liability, which is required under a hostile work environment claim under Title VII. *See Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 277, 285 (1998). But, otherwise, "the operative elements" of a hostile

work environment claim under Title VII and Title IX are "essentially the same." *Kahan*, 50 F. Supp. 3d at 697.

Deliberate indifference requires more than mere negligence, and examines whether the response to the harassment, or lack of response, is "clearly unreasonable in light of the known circumstances." *Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 648 (1999). South Side argues that Ms. Colavecchia has failed to plead any facts that show it acted with deliberate indifference to a report of discrimination. However, Ms. Colavecchia alleges that she reported Mr. Kavals' behavior to the principal and superintendent after attending a Title IX training course, that a completed Title IX investigation revealed that other female staff had made similar complaints against Mr. Kavals, and South Side was aware of his continuing sexual harassment but failed to take any corrective action. Therefore, the Court finds it plausible at this preliminary stage that South Side acted with deliberate indifference to a report of discrimination. Accordingly, Defendants' Motion to Dismiss the hostile work environment claim under Title IX will be DENIED.

**IV.   Conclusion**

For the foregoing reasons, South Side's Motion to Dismiss is hereby GRANTED IN PART and DENIED IN PART. The Motion to Dismiss is GRANTED with respect to Ms. Colavecchia's claim of constructive discharge under Title VII and DENIED with respect to Ms. Colavecchia's hostile work environment claims under Title VII and Title IX.

Ms. Colavecchia's claim of constructive discharge under Title VII is DISMISSED WITHOUT PREJUDICE, and she is granted leave to amend her allegations to address the deficiencies discussed above. Ms. Colavecchia shall file an Amended Complaint, if any, on or before May 5, 2023.

DATED this 21st day of April, 2023.

                                      BY THE COURT:

                                      <u>/s/ Christy Criswell Wiegand</u>
                                      CHRISTY CRISWELL WIEGAND
                                      United States District Judge

cc (via ECF email notification):

All Counsel of Record